IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

MARLOW HUMBERT,                         *

    Plaintiff,                          *

       v.                              *        CIVIL NO.: WDQ-11-0440

MARTIN O'MALLEY,                        *
    *et al.*,                           *

    Defendants.                         *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Marlow Humbert sued several police officers and others for
constitutional violations under 42 U.S.C. § 1983 and state law
claims. ECF No. 1. Trial is scheduled to begin on April 13,
2015 on claims against Christopher Jones, Dominick Griffin, and
Caprice Smith (the "police defendants"). ECF No. 153.[1] Pending
are the police defendants' motions *in limine*. ECF Nos. 165,
166, 167, 168, 169, 170. For the following reasons, the Court
will deny the police defendants' motion to preclude argument
that police defendants had a duty to further investigate, grant
in part the police defendants' motion to preclude medical

---

[1] Those claims include: (1) a § 1983 claim for malicious
prosecution and conspiracy to maliciously prosecute (count
three); (2) violations of Articles 24 and 26 of Maryland's
Declaration of Rights and conspiracy to violate those rights
(count eleven); (3) negligence (count fifteen); (4) negligent
failure to warn (count sixteen); and (5) malicious prosecution
and conspiracy to maliciously prosecute under Maryland state law
(count eighteen). ECF Nos. 1 at 45-47, 50-68, 70-74; 138.

references to Humbert's insurance status, and defer ruling on the remaining motions until trial.

I.   Background

   A.   Facts[2]

   This suit arises from the April 29, 2008 rape of a woman[3] at her home in Baltimore's Charles Village neighborhood.   ECF No. 154 at 3.   After walking home from the store, the Victim had observed a man walking toward her.   *See id.*   She walked past the man, opened her front door, turned around, and discovered that he had followed her into her apartment.   *See id.*   The man put on a white face mask and gloves and placed a black handgun against her head.   *See id.*   He demanded money, but she told him she had none.   *See id.*   The man then pushed her onto a nearby couch and raped her.   *See id.*   He told her that he had a condom on, but she did not remember him stopping to put on the condom.   *See id.*; ECF No. 138 at 3.

   Sergeant Jones and Detective Griffin interviewed the Victim soon afterward.   ECF No. 154 at 4.   The Victim described her assailant as a black man in his early to mid-30s, five-foot-

---

[2] The facts are from the parties' Joint Pretrial Statement, ECF No. 154, and the Court's prior Memorandum Opinion resolving summary judgment motions, ECF No. 138; *see also Humbert v. O'Malley et al.*, Civil No. WDQ-11-440, 2014 WL 1266673 (D. Md. March 25, 2014).

[3] Although the woman is referred to by name in the parties' submissions, because she is not a party to the lawsuit the Court will refer to her as the "Victim."

seven to five-foot-nine inches tall, and wearing a blue T-shirt
with a pink logo and tennis shoes.  ECF No. 138 at 3.  On May 1,
2008, Detective Griffin and Sergeant Jones took the Victim to
meet with Detective Brassell, a sketch artist.  ECF No. 154 at
4.  Detective Brassell completed a composite sketch that was
widely distributed.  *See id.*

On May 2, 2008, Detective Smith met with the Victim and
showed her 45 photos of registered sex offenders.  *Id.* at 5.
After reviewing the photos, the Victim stated that two of the
photos resembled her attacker but did not identify either of
them as her attacker.  *Id.*  On May 8, 2008, Detectives Smith and
Griffin showed the Victim an array of photos that included
Humbert's photo.  *Id.*  According to the police defendants, the
Victim saw Humbert's photo, stated "that's him," and became
emotional.  *Id.*  However, the Victim declares that she saw
Humbert's photo and said that "might" be him.  ECF No. 138 at 7.

On May 9, 2008, Detective Smith applied for an arrest
warrant for Humbert.  ECF No. 138 at 8.  On May 10, 2008,
Humbert was arrested.  ECF No. 154 at 5.  On May 14, 2008,
pursuant to a search warrant, officers obtained oral swabs of
Humbert's DNA.  ECF No. 138 at 9.  On June 2, 2008, "the crime
lab excluded [Humbert] as the DNA contributor to the sample
taken from [the Victim]."  *Id.* at 10.  The Assistant State's

Attorney, Joakim Tan, learned of the results "at most three weeks after it was received." ECF No. 154 at 5.

On July 30, 2009, Tan dismissed the charges, and Humbert was released. *Id.* at 14.

B.   Procedural History

On February 16, 2015, the police defendants moved *in limine* to preclude (1) argument that any police Defendant had a duty to further investigate the Victim's rape, (2) any reference to the photo arrays and argument that the photo arrays were unnecessarily suggestive, (3) mention of Jones's or Griffin's alleged unprofessional comments to the Victim and her friend, (4) medical references, (5) argument that the facts in the warrant application, if true, are insufficient to establish probable cause, and (6) reference to or evidence of DNA testing that excludes Humbert as a contributor of semen from the Victim. ECF Nos. 165, 166, 167, 168, 169, 170.  On March 13, 2015, Humbert opposed the motions.  ECF No. 173.  On March 23, 2015, the police defendants replied.  ECF No. 176.

II. Analysis

The police defendants seek preclusion on grounds of irrelevance, undue prejudice, and failure to authenticate. Humbert generally opposes the motions on the basis that relevance and prejudice cannot be determined until trial.  ECF No. 173 at 3.

4

Evidence is relevant if it has any tendency to make the existence of any fact of consequence more or less probable than it would be without the evidence.  Fed R. Evid. 401.  Evidence that is not relevant is generally not admissible.  Fed R. Evid. 402.  Relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice. Fed R. Evid. 403.  When conducting Rule 403 balancing, courts should "give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."  *E.I. DuPont De Nemours & Co. v. Kolon Indus., Inc.*, 564 F. App'x 710, 715 (4th Cir.) *cert. denied*, 135 S. Ct. 439, 190 L. Ed. 2d 352 (2014)(*quoting Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000)).

    A.    Motion to Preclude Argument that Police Defendants had a Duty to Further Investigate

The police defendants contend that the Court should bar Humbert from arguing that the police defendants failed to investigate whether another person was responsible for the rape and did not otherwise continue their investigation.  ECF No. 165 at 1.  Relying on the "public duty doctrine," the police defendants argue that because Humbert has not alleged a special relationship, he cannot establish the duty element of his negligence claims and, thus, "[a]ny argument or evidence that

any [police defendant] should have taken any other investigatory action is therefore irrelevant and not admissible."  *Id*. at 2.[4]

Humbert contends that the argument and evidence are relevant to (1) his conspiracy claims, (2) whether there was probable cause to arrest him, and (3) the reasonableness of the police defendants' belief that there was probable cause.  ECF No. 173 at 8.[5]

The existence of a duty is a question of law, to be decided by the Court.  *McNack v. State*, 398 Md. 378, 395, 920 A.2d 1097, 1107 (2007).  The public duty doctrine provides that, "when a statute or common law imposes upon a public entity a duty to the public at large, and not a duty to a particular class of individuals, the duty is not one enforceable in tort." *Muthukumarana v. Montgomery Cnty.*, 370 Md. 447, 486, 805 A.2d 372, 395 (2002).  "[T]he 'duty' owed by the police by virtue of their positions as officers is a duty to protect the public." *Ashburn v. Anne Arundel Cnty.*, 306 Md. 617, 628, 510 A.2d 1078, 1084 (1986).  Thus, "police officers ordinarily may not be held

---

[4] At the summary judgment stage, the police defendants argued that they were entitled to qualified immunity on Humbert's negligence claims.  ECF No. 74-1 at 23.  The Court found triable issues of fact on whether they were entitled to immunity.  ECF No. 138 at 53.  The police defendants now argue that Humbert's negligence claims fail for lack of a duty.

[5] Beyond noting the police defendants' argument, Humbert has not addressed the application of the public duty doctrine to this case.  *See* ECF No. 173 at 8.

liable for failure to protect specific persons because they owe

no duty, as the first element of a negligence action requires,

to those individuals." *Muthukumarana*, 370 Md. at 486-87, 805

A.2d at 395.

The public duty doctrine typically shields officers from

liability for negligent "failure to prevent the infliction of

harm by one 'lay' person to another." *Jones v. State*, 425 Md.

1, 25, 38 A.3d 333, 347 (2012).[6] However, the public duty

doctrine "is simply a non-sequitur [when] the government itself

is solely responsible for that injury, which it has caused by

the allegedly negligent use of its own police powers." *Id.* at

24-25, 38 A.3d at 347 (*quoting Liser v. Smith*, 254 F. Supp. 2d

89, 102 (D.D.C. 2003)).[7]

---

[6] *See McNack*, 398 Md. at 403, 920 A.2d at 1111(doctrine protected
the State and Maryland City from liability for failing to
protect the plaintiff from drug dealers who firebombed the
plaintiff's home); *Boyer v. State*, 323 Md. 558, 577-78, 594 A.2d
121, 130-31 (1991)( doctrine shielded a law enforcement officer
from the officer's allegedly negligent decision not to apprehend
a drunk driver who then struck and killed two motorists);
*District of Columbia v. Evans*, 644 A.2d 1008, 1017 (D.C.
1994)("This doctrine deals with the question whether public
officials have a duty to protect individual members of the
general public against harm from third parties or other
independent sources.")

[7] In explaining the purpose underlying the public duty doctrine,
the Maryland Court of Appeals quoted with approval a decision
from the District of Columbia Court of Appeals, which stated:

> [I]f the police were held to a duty enforceable by
> each individual member of the public, then every
> complaint-whether real, imagined, or frivolous would

Thus, it does not apply when "law enforcement is not
engaged in protecting the public from an injurious force *caused
by a member of the public*, but rather *is itself the alleged
injurious force*."  *Id.* at 8-10, 25, 38 A.3d at 337-38, 347
(emphasis added)(doctrine inapplicable when officers forced
their way into the plaintiff's home to arrest someone else,
punched her, sprayed her with pepper spray, and forced her to
change into her clothes in her apartment building's parking
lot).[8]

---

    raise the spectre of civil liability for failure to
    respond.  Rather than exercise reasoned discretion and
    evaluate each particular allegation on its own merits
    the police may well be pressured to make hasty arrests
    solely to eliminate the threat of personal prosecution
    by the putative victim.  Such a result historically
    has been viewed, and rightly so, as untenable,
    unworkable and unwise.  Furthermore, a policy which
    places a duty on a police officer to insure the safety
    of each member of the community would create an
    unnecessary burden on the judicial system. Under such
    circumstances, the slightest error of a policeman
    would give rise to a potential law suit.

*Ashburn*, 306 Md. at 629-30, 510 A.2d at 1084(*quoting Morgan v.
District of Columbia*, 468 A.2d 1306 (D.C. 1983)(internal
citations omitted).  From the above, it is clear that the
doctrine is intended to protect officers from liability arising
from the conduct of third parties from whom "putative victim[s]"
claim they should have been protected by law enforcement.

[8] *See also Bates v. Doria*, 150 Ill. App. 3d 1025, 1031, 502
N.E.2d 454, 458 (1986)(the doctrine is inapplicable to negligent
employment of a police officer claim because liability was not
premised on "defendants' failure to prevent the commission of
crimes").

Here, Humbert's negligence claims are premised on the police defendants' allegedly improper motivation to solve the Victim's rape case, arrest of Humbert, and failure to furnish exculpatory evidence. Pl. Oppos. Summ. J. at 47. In other words, Humbert contends that the police defendants were the "alleged injurious force." *See Jones*, 425 Md. at 25. Thus, the public duty doctrine does not bar Humbert's negligence claims.

Accordingly, the police defendants' argument that the conduct of the investigation is irrelevant is unavailing; the motion will be denied.[9]

B. Motion to Preclude Certain Medical References

The police defendants seek to preclude Humbert's medical records and bills because they have not been authenticated, and Humbert "would be unable to lay the foundation to demonstrate

---

[9] Additionally, evidence that the police defendants failed to investigate other suspects is relevant to whether there was probable cause to arrest Humbert and the reasonableness of the police defendants' belief in probable cause. Thus, it is relevant to whether malice bars qualified immunity on the negligence claims. In Maryland, a public official is immune from tort liability in negligence if: "(1) he or she [is] a *public official*; and (2) his or her tortious conduct . . . occurred while performing *discretionary* acts in furtherance of official duties; and (3) the acts [were] done without malice." *Williams v. Mayor & City Council of Baltimore*, 359 Md. 101, 140-41, 753 A.2d 41, 62 (2000). Although actual malice may not be inferred from a lack of probable cause alone, it may "be inferred from an arrest that was so lacking in probable cause and legal justification as to render [the defendant officers'] stated belief in its existence unreasonable and lacking in credibility." *McDaniel v. Arnold*, 898 F. Supp. 2d 809, 850 (D. Md. 2012) (*citing Thacker*, 135 Md. App. at 308, 762 A.2d at 193-94).

that the medical records" are business records properly admitted

under Rule 803(6).  ECF No. 168 at 3.  The police defendants

also seek to preclude references to (1) Humbert's medical

records and bills because he has not designated an expert to

testify about the reasonableness of his treatment, and (2)

Humbert's insurance status on grounds of irrelevance and

prejudice.  *Id.* at 3-4.

The Court will defer ruling on the admissibility of

Humbert's medical records until the Court can determine whether

they have been properly authenticated and Humbert shows that the

records are not hearsay.  Additionally, until Humbert's evidence

about his medical treatment is before the Court, the Court will

defer ruling on whether expert testimony is required.[10]

However, "[e]vidence of insurance coverage is ordinarily

inadmissible," whether the evidence "concerns liability coverage

of defendants,[11] or collateral benefits coverage of plaintiffs."

*Braun v. Lorillard, Inc.*, No. 94C976, 1996 WL 14027, at *1 (N.D.

Ill. Jan. 11, 1996)(excluding references to plaintiff's medical

insurance); *see also Halladay v. Verschoor*, 381 F.2d 100, 112

---

[10] Humbert contends that he intends to offer testimony about his
pain and suffering, which the police defendants do not seek to
preclude.  ECF Nos. 173 at 10; 176 at 3.  It is now unclear
whether Humbert will seek to introduce additional evidence
related to his physical and mental condition.

[11] Rule 411 generally bars evidence of liability insurance to
prove wrongdoing.  *See* Fed. R. Evid. 411.

(8th Cir. 1967)("Under the general rule, the fact that the plaintiff is protected by insurance or other indemnity cannot be shown" because "the parties are entitled to have the issues determined on their merits"); *Sands v. Kawasaki Motors Corp. U.S.A.*, 513 F. App'x 847, 854 (11th Cir. 2013)(affirming exclusion of plaintiff's medical insurance because prejudice "far outweigh[ed] any probative value"). Thus, the Court will grant the police defendants' motion and bar evidence of Humbert's insurance status.[12]

C. Remaining Motions

The remaining motions *in limine*[13] involve questions of relevance and prejudice concerning speculative arguments and evidence; the Court is unable to resolve these motions outside of the context of trial. Accordingly, the Court will defer ruling on those motions.

---

[12] However, the Court is willing to revisit this issue at trial if Humbert shows that the evidence is relevant and provides an acceptable reason for declining to apply the general rule that evidence about insurance status is inadmissible.

[13] They include: the police defendants' motions to preclude reference to the photo arrays and argument that the photo arrays were unnecessarily suggestive, mention of Jones's or Griffin's alleged unprofessional comments to the Victim and her friend, argument that the facts in the warrant application, if true, are insufficient to establish probable cause, and reference to or evidence of DNA testing excluding Humbert as a contributor. ECF Nos. 166, 167, 169, 170.

## III. Conclusion

For the reasons stated above, the Court will deny the police defendants' motion to preclude argument that police defendants had a duty to further investigate, grant in part the police defendants' motion to preclude medical references as to Humbert's insurance status, and defer ruling on the remaining motions until trial.

\_\_\_\_4/6/15_____            _____
Date                                 William D. Quarles, Jr.
                                     United States District Judge